BEACON JOURNAL PUBLISHING CO., APPELLEE, *v.* CITY OF AKRON, APPELLANT.

[Cite as Beacon Journal Publishing Co. v. City of Akron, 3 Ohio St. 2d 191.]

(No. 39144—Decided July 28, 1965.)

194

*Messrs. Brouse, McDowell, May, Bierce & Wortman* and *Mr. Karl S. Hay*, for appellee.

*Mr. R. C. Sheppard*, director of law, and *Mr. Thomas S. Haney*, for appellant.

*Per Curiam.* This court is asked to determine which of the boards and commissions designated by the various paragraphs of the above-quoted stipulation are subject to Section 133.01 of the city code, which are subject to Section 121.22, Revised Code, and which are subject to neither of these provisions of law.

The court is asked further to determine what functions and activities of these boards and commissions, which are subject to either the ordinance or the statute, are controlled by its provisions.

Akron is a charter city. Section 7, Article XVIII, of the Ohio Constitution, provides:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this article, exercise thereunder all powers of local self-government."

Section 3, Article XVIII, of the Ohio Constitution, provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

In the case of *State, ex rel. Canada,* v. *Phillips, Dir.,* 168 Ohio St. 191, this court said (paragraph four of the syllabus):

"The words, 'as are not in conflict with general laws' found in Section 3 of Article XVIII of the Constitution, modify the words 'local police, sanitary and other similar regulations' but do not modify the words 'powers of local self-government.' "

The municipality is vested with full powers of self-government, except that local laws may not be adopted in the field of police, sanitary or other similar regulations which conflict with the general law.

The ordinance designated as Section 133.01 of the City Code of Akron is not a local police, sanitary or other similar regulation. This ordinance and Section 121.22, Revised Code, have similar provisions and are not in conflict.

To determine which of the boards and commissions are subject to the city ordinance, which are subject to the state statute and which are subject to neither of these provisions of law, the

court must look at the provisions of the charter, the ordinances and statutes which create certain of the boards.

Section 1 of the charter provides:

"* * * all powers, whether express or implied, shall be exercised and enforced in the manner prescribed by this charter, or when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the council, and when not prescribed by this charter or amendments thereto, or ordinance of council, then said powers shall be exercised in the manner prescribed by the state law."

It is contended by the plaintiff that under this provision council derives its power to regulate the procedures and policies of the boards and commissions established in the charter with regard to the conduct of their meetings.

Plaintiff contends that there is no provision in the charter that any board or commission may make a "closed meeting" rule and that, therefore, the "open meeting" ordinance, enacted by council, is controlling.

Those boards and commissions designated in paragraphs A and B of the stipulation were created by ordinance. The council, having created these, has the power to control their rules of procedure with regard to their meetings and these agencies are subject to the city ordinance designated as Section 133.01 of the city code.

The board designated in paragraph C of the stipulation as the assessment equalization board was created by act of the General Assembly, Section 727.16 of the Revised Code, and is subject to the provisions of Section 121.22 of the Revised Code, in the conduct of its meetings.

With regard to other boards appointed directly by city council without involving the mayor and chief administrator, it would be necessary to examine the act creating each agency to determine, by the provisions of that enactment, whether the city ordinance, Section 133.01, or the statute, Section 121.22, Revised Code, or neither of these provisions would control the conduct of meetings of those boards.

Those boards and commissions designated in paragraph F of the stipulation were created by executive order of the mayor and chief administrator and are not subject to the provisions of the statute or the ordinance.

Those boards and commissions designated in paragraphs D and E of the stipulation were created by the charter and it is necessary to look at the provisions of the charter with regard to each board to determine whether such board is subject to the ordinance, the state statute, or to neither of these provisions of law.

Section 78 of the charter creates the department of health. Section 79 of the charter provides its powers in the following language:

"The health commission shall have all of the powers which are conferred by law and by the Constitution of Ohio upon municipal boards of health. The health commission shall have *full legislative power in all matters* concerning the public health and sanitation, and the director of health shall have full administrative and executive powers. All rules and regulations enacted by the health commission shall have the force of ordinances when recorded and published as ordinances * * *. The health commission shall have power to provide by regulation or ordinance for the punishment of violation of the rules, regulations, or ordinances enacted by it. The penalty for such violation may be either fine or imprisonment, or both, as may be determined by the health commission." (Emphasis added.)

Section 81 provides that the health commission "shall have general police powers."

The health commission, under the charter, has full legislative power in all matters concerning the public health and sanitation and is not controlled by ordinances passed by the city council. The health commission can provide its own rules for the conduct of its meetings.

The Charter, Section 96, provides that the sinking fund commission in office at the time the charter took effect was to "* * * continue with all the powers and duties now provided by the laws of the state of Ohio and by ordinance. * * *" Thus, the sinking fund commission is subject to both the city ordinance, Section 133.01 of the city code, and Section 121.22, Revised Code.

The board of trustees of the public library, created by Section 97 of the charter "shall continue with such powers and duties as are conferred or imposed by law upon boards of trustees of public libraries of cities * * *." Thus, the board of trustees

of the public library is subject to Section 121.22, Revised Code.

Under the charter, Section 98, the members of the board of directors of the municipal university "* * * have all the powers and duties now or hereafter provided for by the state law." Thus, this board is subject to the provisions of Section 121.22, Revised Code.

The city planning commission, created by Section 100 of the charter, in Section 102 is given "such other powers and duties as the council may confer upon the planning commission * * *." Thus, the city planning commission is subject to the provisions of Section 133.01 of the city code.

The civil service commission was created by Section 103. It is given power by Section 106 of the charter to make effective the "* * * rules and regulations for the administration of the civil service provisions of the charter." In paragraph (13) of Section 106, the commission is given power to make "such other rules * * * not inconsistent with the foregoing provisions of this section as may be necessary and appropriate for the enforcement of the merit system." The civil service commission is not subject to either Section 133.01 of the city code, or Section 121.22, Revised Code. This commission has authority, under the charter, to provide its own rules for the conduct of its meetings.

The plaintiff also asked the court to determine what functions and activities of the boards and commissions referred to in the stipulation are covered by Section 121.22, Revised Code, and Section 133.01 of the city code.

It is clear that the public has no common-law right to attend meetings of governmental bodies. See Open Meeting Statutes: The Press Fights for the "Right to Know," 75 Harvard L. Rev. 1199, 1203 (March 1962).

Therefore, any right the public has to attend meetings of the governmental bodies referred to in this cause must arise by reason of the provisions of the ordinance or the statute which have been referred to here.

An examination of both the statute and the ordinance reveals that the second sentence in both the ordinance and the statute limits the first sentence in each; otherwise there would be no reason for the second sentence in each. Therefore, it

must be concluded that both the council and the General Assembly clearly intended that those meetings which are required to be open to the public are *all meetings of any board or commissions, where any resolution, rule, regulation or formal action of any kind shall be adopted or passed.*

This means that at any session of a board or commission subject to the ordinance or the statute, where any action is taken, which action is required by law, rule or regulation to be recorded in the minutes, the journal or any other official record of the board or commission, such session is a meeting which must be open to the public.

It is clear that the General Assembly anticipated executive sessions of boards or commissions when it provided, "No resolution, rule, regulation or formal action of any kind shall be adopted at any *executive session* of any board or commission * * *." (Emphasis added.)

The council of the city of Akron and the General Assembly have not prohibited executive sessions of any board or commission.

The appellee cites only two cases in support of its position.

The first is *Minter* v. *Santa Monica*, Superior Court of Los Angeles County, opinion No. 666318, dated September 6, 1956, by Judge David. This is a lower court opinion and is not the law of California. See *Adler* v. *City Council of City of Culver City* (1960), 184 Cal. App. 2d 763.

The second case relied upon by the appellee is *Acord* v. *Booth*, 33 Utah 279, 93 P. 734. However, a reading of the entire opinion in this case indicates that it is in accord with the conclusion reached by this court.

*Turk, Mayor,* v. *Richard* (Fla.), 47 So. 2d 543, and *Barnes* v. *City of New Haven*, 140 Conn. 8, 98 A. 2d 523, are in accord with the view of this court.

The judgment of the Court of Appeals is, therefore, reversed in part, affirmed in part, and modified in part.

*Judgment accordingly.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT, SCHNEIDER and BROWN, JJ., concur.